UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

| | | |
|---|---|---|
| HOT SPRING COUNTY SOLID WASTE AUTHORITY, et al. | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. CV-05-6065 |
| UNITEDHEALTH GROUP d/b/a UNITED HEALTHCARE, et al. | ) ) ) | |
| Defendants. | ) ) ) | |

**DEFENDANT UNITEDHEALTH GROUP, INC.'S
MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

Defendant UnitedHealth Group, Inc. ("United") by counsel, hereby moves the Court, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Third Amended Complaint filed by Plaintiffs Hot Spring County Solid Waste Authority, Angela Pigue, and Lori Childers. As set forth in the accompanying Memorandum of Points and Authorities in Support of UnitedHealth Group, Inc.'s Motion to Dismiss the Third Amended Complaint, Plaintiffs' allegations against United should be dismissed because: (1) Plaintiffs failed to comply with the instructions of the Circuit Court of Hot Spring County to amend their Complaint to assert claims relating to the overcharging for co-payments in connection with the purchase of prescription drugs ("Co-Payment Claims"); (2) the Third Amended Complaint fails to state a Co-Payment Claim; (3) Plaintiffs have failed to make allegations sufficient to establish standing; and

(4) Plaintiffs cannot maintain a Co-Payment Claim based on the individual legal theories identified in the Third Amended Complaint.

United respectfully requests that the Court grant its Motion to Dismiss and dismiss Plaintiffs' Third Amended Complaint with prejudice.

Respectfully submitted this 9th day of September, 2005.

/s/ Louis L. Loyd
Louis L. Loyd, Esq.
Bar Number 92181
108 West Third Street
Malvern, Arkansas 72104
Telephone: 501-332-6633
Facsimile: 501-332-6644
Email: louisloyd@sbcglobal.net

Thomas F. Fitzgerald, Esq. (admitted *pro hac vice*)
Michael J. Prame, Esq. (admitted *pro hac vice*)
Christa D. Haas, Esq. (admitted *pro hac vice*)
Groom Law Group, Chartered
1701 Pennsylvania Ave., N.W.
Washington, DC 20006
Telephone: 202-857-0620
Facsimile: 202-659-4503
Email: cdh@groom.com

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

| | |
|---|---|
| HOT SPRING COUNTY SOLID WASTE AUTHORITY, et al.<br><br>        Plaintiffs,<br><br>v.<br><br>UNITEDHEALTH GROUP d/b/a UNITED HEALTHCARE, et al.<br><br>        Defendants. | Case No. CV-05-6065 |

**DEFENDANT UNITEDHEALTH GROUP, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
TO DISMISS THE THIRD AMENDED COMPLAINT**

Defendant UnitedHealth Group, Inc. ("United") hereby submits its Memorandum of Law in Support of its Motion to Dismiss the Third Amended Complaint.

**Preliminary Statement**

Hot Spring County Solid Waste Authority ("SWA") purchased an insurance policy from a United affiliate. The policy is a fully-insured product. As a result, the only cost outlays from SWA are the premiums it pays for the insurance policy.

Under the insurance policy, United is financially responsible for the prescription drug costs incurred by SWA employees (and their dependants) covered under the policy. SWA employees covered under the insurance policy are to pay co-payments in connection with their purchase of prescription drugs.

To satisfy its financial responsibility for the employees' covered prescription drug costs, United subcontracts with Medco Health Solutions, Inc. ("Medco"), one of the three pharmacy benefits managers ("PBMs") named as defendants. PBMs, among other things, form networks of pharmacies that agree to participate in a program that establishes discounted prices for prescription drugs at the retail level in exchange for increasing the potential size of each pharmacy's group of retail customers. *See generally Merck-Medco Managed Care, Inc. v. Rite Aid Corp.*, 22 F. Supp. 2d 447, 452 (D. Md. 1998).

In the initial complaint SWA filed in the Circuit Court of Hot Spring County (the "State Court") in June 2004, SWA alleged that Medco and the other PBMs named as defendants (Caremark, Inc. and Advance PCS) used various surreptitious techniques to increase their own profits by increasing, rather than decreasing, the overall cost of prescription drugs.[1] SWA further alleged that United knew or should have known that the PBMs (or at least the PBMs with whom United contracted) engaged in these activities

---

[1] Specifically, the PBMs allegedly withheld and/or failed to disclose access rebates, market share rebates, administrative fees, and other fees and grants, (Compl. at ¶¶ 17(b), 26-28), made inappropriate use of "spreads," (Compl. at ¶¶ 17(c), 29-33), inappropriately used formulary determinations designed to increase their profit, (Compl. at ¶¶ 17(d), 34-35), made inappropriate use of manufacturer incentives, (Compl. at ¶¶ 17(e), 36-37), and inappropriately used prompt payment on mail order discounts, (Compl. at ¶¶ 17(f), 38-39).

and that this actual or constructive knowledge of wrongdoing caused harm to SWA.[2]

SWA's Complaint (as amended) asserted four causes of action: (1) violation of the Arkansas Deceptive Trade Practices Act ("Trade Practices Act"), Ark. Code § 4-88-101, *et seq.*, (2) breach of fiduciary duty, (3) negligent supervision and management, and (4) negligence.[3]

Each of the Defendants filed a motion to dismiss SWA's Complaint.  On June 23, 2005, the State Court denied the motions to dismiss filed by the PBMs, ruling that SWA may proceed against the PBMs on a contractual cause of action. (Exhibit A (June 23, 2005 Order) at ¶ 1.)

The State Court, however, granted United's motion and dismissed SWA's action against United with prejudice.  The State Court reasoned that SWA's claims against United related to the insurance premiums that it paid for insurance coverage and, therefore, SWA's claims were barred by the filed rate doctrine.  (Exhibit A at ¶ 2.) Because its ruling on the filed rate doctrine disposed of the case against United, the State Court did not otherwise address the viability of the four theories of recovery that SWA had identified in the Complaint.

---

[2]  Hatcher Enterprises, Inc. ("Hatcher"), an insurance agency, was also named as a defendant in the initial complaint filed by SWA.  SWA voluntarily dismissed Hatcher as a defendant on December 13, 2004.

[3]  SWA had initially asserted a claim for civil conspiracy, but withdrew the claim on December 13, 2004.

In its ruling, the State Court theorized that SWA employees may have claims against United and the PBMs if the employees had been overcharged for co-payments in connection with the purchase of prescription drugs (the "Co-Payment Claims"). (Ex. A at ¶ 3.) The State Court concluded, however, that:

> [SWA] does not have standing to maintain the Co-Payment Claims on behalf of its employees as to either United or the PBM Defendants. The employees of [SWA] must bring an action on their own behalf asserting the Co-Payment Claims.

*Id*. The State Court granted leave to file within twenty days an Amended Complaint asserting the Co-Payment Claims by SWA employees. *Id*. In the absence of such an amendment, the Co-Payment Claims were to be dismissed with prejudice as to all Defendants. *Id*.

The Amended Complaint that was filed in State Court on July 26, 2005 only added Angela Pigue and Lori Childers as plaintiffs and identified them as employees of SWA.[4] Plaintiffs failed to amend the Complaint to specifically identify and articulate claims related to the co-payments paid by SWA employees. Indeed, the term "co-payment," cannot be found in any version of the Complaint and the Third Amended Complaint fails to identify how (if at all) co-payments were affected by the PBM's conduct. Further, neither Ms. Pigue nor Ms. Childers have alleged that (1) they purchased prescription drugs; (2) they paid a co-payment in connection with the purchase of the prescription

---

[4] Copies of the original Complaint and all amendments thereto are attached as Exhibit B.

drugs; (3) they were overcharged for their co-payment, or (4) United is responsible for any such harm.

As discussed in greater detail below, the Third Amended Complaint should be dismissed for four independent reasons. First, by failing to amend the Complaint to specifically identify and articulate claims related to the co-payments paid by SWA employees, Plaintiffs[5] failed to comply with the State Court's June 23, 2005 Order. Second, the Third Amended Complaint fails to state a Co-Payment Claim and, therefore, should be dismissed under Rule 12(b)(6), Fed. R. Civ. P. Third, Ms. Pigue and Ms. Childers have failed to allege a basis for concluding that they have standing to assert a Co-Payment Claim. Finally, neither Ms. Pigue, Ms. Childers, nor any other SWA employee could maintain a Co-Payment Claim based on the legal theories that are identified in the Complaint, as amended (*i.e.*, violation of the Trade Practices Act, breach of fiduciary duty, negligent supervision and management, and negligence).

## Argument

**A.   Plaintiffs' Complaint Should Be Dismissed For Failure to Comply With the State Court's June 23, 2005 Order**

In dismissing SWA's allegations against United, the State Court gave leave for SWA employees to "bring an action on their own behalf" which "asserts claims related to

---

[5]  Although Plaintiffs are referenced collectively throughout this memorandum, SWA's action against United was dismissed in its entirety with prejudice on June 23, 2004. Thus, as to United, only the allegations of Ms. Pigue and Ms. Childers remain at issue.

the overcharging of the co-payments paid by employees of the Hot Spring County Solid Waste Authority." (Ex. A at ¶ 3.) The State Court gave 20 days leave (later extended to August 1, 2005) to amend as instructed or the Co-Payment Claims were to be dismissed with prejudice as to all Defendants. *Id*. Instead of articulating a Co-Payment Claim, the Third Amended Complaint simply states that Ms. Pigue and Ms. Childers are employees of SWA and that they adopt, re-affirm and incorporate by reference the allegations previously made by SWA. (Ex. B.)

The Third Amended Complaint does not, as the State Court ordered, "assert[] claims related to the overcharging of . . . co-payments." Indeed, the word co-payment does not appear in the Complaint. Further, Plaintiffs have not alleged that co-payments were overcharged or described how the conduct of the PBMs caused any cognizable harm in relation to co-payments for prescription drugs. As a result, the Third Amended Complaint does not comply with the State Court's Order and should be dismissed with prejudice.

**B.   Plaintiffs' Complaint Should Be Dismissed for Failure to State A Claim**

For the same reasons that the Third Amended Complaint does not comply with the State Court's Order, it also fails to state a claim upon which relief can be granted. Under the State Court's prior ruling, Plaintiffs are limited to asserting a claim against United based on overcharging of co-payments. Nevertheless, this claim does not appear anywhere in the Third Amended Complaint. Absent an articulation of this theory of recovery, the Third Amended Complaint fails to state a claim upon which relief can be granted and should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

### C. Plaintiffs' Allegations Do Not Establish that They Have Standing to Assert Co-Payment Claims

To present a justiciable controversy, a plaintiff must have (1) suffered an actual, concrete and particularized injury in fact, (2) with a causal connection between such injury and the conduct complained of, and (3) that is redressible by a favorable decision. *Delorme v. United States*, 354 F.3d 810, 815 (8th Cir. 2004); *Oti Kaga, Inc. v. South Dakota Housing Dev. Auth.*, 342 F.3d 871, 878 (8th Cir. 2003). A plaintiff who has no cognizable injury has no standing and cannot present a justiciable claim. *Delorme*, 354 F.3d at 815; *Oti Kaga*, 342 F.3d at 878. And, in the absence of a plaintiff with standing, the court does not have subject matter jurisdiction over the action. *Faibisch v. University of Minnesota*, 304 F.3d 797, 801 (8th Cir. 2002).

By virtue of the State Court's June 23, 2005 Order, Plaintiffs are limited to asserting an action against United relative to the overcharging of co-payments for prescription drugs. Ms. Pigue and Ms. Childers have not alleged that (1) they purchased prescription drugs, (2) they were required to pay a co-payment, (3) the amount of that co-payment was affected by the conduct of the PBMs and was incorrect, or (4) United is responsible for any such harm. Absent such allegations, Ms. Pigue and Ms. Childers lack standing to proceed against United and the Third Amended Complaint should be dismissed.

### D. Plaintiffs Cannot Maintain a Co-Payment Claim Based on Legal Theories Previously Identified

SWA's prior complaints, which Ms. Pigue and Ms. Childers have adopted, identified four potential causes of action: (1) violation of the Arkansas Deceptive Trade

7

Practices Act, (2) breach of fiduciary duty, (3) negligent supervision, and (4) negligence. As discussed below, the Co-Payment Claims cannot be maintained against United under these theories.

### 1. Plaintiffs Cannot Maintain a Co-Payment Claim Under the Trade Practices Act

Although the Trade Practices Act authorizes private lawsuits against businesses that engage in certain deceptive practices, it excludes from its coverage "[a]ctions or transactions permitted under laws administered by the Insurance Commissioner . . . ." Ark. Code § 4-88-101. The only conduct of United potentially at issue in this lawsuit is the determination of the co-payments for prescription drugs under the insurance policy that United issued. United may only transact insurance in Arkansas if it first complies with the Arkansas Insurance Code, enforced by the Arkansas Insurance Commissioner. *See* Ark. Code § 23-63-202. As the conduct of United at issue is regulated by the Arkansas Insurance Commissioner, the Trade Practices Act does not apply.

Many states reserve the oversight of insurance to the state insurance commissioner, and correspondingly exclude insurance entities from general consumer deceptive trade statutes. For example, in *Comeaux v. Pennsylvania General Ins. Co.*, 490 So. 2d 1191, 1193 (La. App. 3d Cir. 1986), plaintiff brought an action against his son's automobile insurer for damages resulting from a fatal car accident. The plaintiff alleged that the insurer had violated the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401, *et seq.*, in the execution of its coverage documents. The statute provided, in relevant part, "The provisions of this chapter shall not apply to:

8

(1) Actions or transactions subject to the jurisdiction of . . . the insurance commissioner . . . to regulate unfair or deceptive trade practices." LSA-R.S. 51-1406. The court dismissed plaintiff's claim court, finding that the Louisiana Insurance Commissioner had jurisdiction over unfair trade practices by virtue of specific provisions in the Louisiana insurance code regulating such practices.

Similarly, in *Ferguson v. United Insurance Company of America*, 163 Ga. App. 282, 293 S.E.2d 736 (Ga. App. 1982), a beneficiary sued under the Georgia Fair Business Practices Act to recover benefits under her husband's life insurance policy. The statute exempted "transactions specifically authorized under laws administered by or rules and regulations promulgated by any regulatory agency." Finding that an action arising from the sale of insurance was excluded, the court held:

> The Insurance Code has created the Insurance Department of the State of Georgia and the office of Insurance Commissioner. The Insurance Commissioner has full power and authority to make rules and regulations to effectuate the provisions of the Insurance Code, [and] no insurer shall transact insurance except as authorized by certificate of authority from the insurance commissioner. Thus, insurance transactions are among those types of transactions which are exempt from the Fair Business Practices Act. This is especially true since the Insurance Code regulates unfair trade practices within the insurance industry . . .

*Id.* at 283, 737 (citations omitted).

In this case, the terms under which United provides insurance in the State of Arkansas is regulated by the Insurance Commissioner, Ark. Code § 23-63-202, thus excluding such conduct from the Trade Practices Act, Ark. Code § 4-88-101. The Arkansas legislative intent to exempt insurance transactions from the Trade Practices Act

9

is underscored by its enactment of the Arkansas Insurance Trade Practices Act (the "Insurance Trade Practices Act").  Ark. Code § 23-66-201, *et seq.* (Michie 2003).  The Insurance Trade Practices Act governs trade practices in the business of insurance, Ark. Code § 23-66-202(a), including allegations of unfair and deceptive acts in the sale and provision of insurance, Ark. Code § 23-66-206.  *See Columbia Mut. Ins. Co. v. Home Mut. Fire Ins. Co.*, 74 Ark. App. 166, 174, 47 S.W.3d 909, 913 (Ark. App. 2001) ("[The Insurance Trade Practices Act], which is designed to protect the public, prohibits unfair methods of competition and unfair trade acts or practices.").  There is, however, no private right of action under the Insurance Trade Practices Act.  Ark. Code § 23-66-202(b); *Columbia Mut. Ins.*, 74 Ark. App. 175, 47 S.W.3d at 914.

As a matter of statutory construction, a statute that deals specifically with a particular matter controls over a statute of more general applicability.  *Pledger v. Mid-State Constr. & Materials, Inc.*, 325, Ark. 388, 395, 925 S.W.2d 412, 417 (1996); *Ballheimer v. Serv. Fin. Corp.*, 292 Ark. 92, 728 S.W.2d 178, 179 (1987) (same).  In this case, the Insurance Trade Practices Act specifically regulates insurers and insurance transactions, and, therefore, the more general Trade Practices Act cannot apply.  Moreover, because there is no private right of action under the Insurance Trade Practices Act, allowing Plaintiffs to maintain a claim against United under the more general Trade Practices Act would circumvent the Arkansas legislature's decision to give the Insurance Commissioner exclusive jurisdiction over the business of insurance.

In sum, the determination of co-payments under United's insurance policy is excluded from the Trade Practices Act because it is within the exclusive jurisdiction of

10

the insurance commissioner. Accordingly, Plaintiffs cannot maintain a Co-Payment Claim against United under the Trade Practices Act.

### 2. Plaintiffs Cannot Maintain a Co-Payment Claim for Breach of Fiduciary Duty

To establish a claim for breach of fiduciary duty, Plaintiffs must show that one standing in a fiduciary relationship to Plaintiffs breached a duty imposed by the fiduciary relationship. *Sexton Law Firm, P.A. v. Phillip J. Milligan*, 329 Ark. 285, 298, 948 S.W.2d 388, 395 (1997). A fiduciary relationship under Arkansas law requires a showing of a close relationship of trust and confidence exceeding that found in ordinary commercial relationships. *Country Corner Food & Drug, Inc. v. First State Bank*, 332 Ark. 645, 654, 966 S.W.2d 894, 898 (1998); *Mans v. Peoples Bank of Imboden*, 10 S.W.3d 885, 889 (Ark. 2000).

In this case, there are no allegations of a special or dependent relationship between Plaintiffs and United. Plaintiffs' only allegation concerning their relationship with United states that they purchased an insurance policy from United. (*See* Compl. at ¶ 24.) In short, Plaintiffs have not and cannot make allegations against United that present any colorable basis for a finding that United owed a fiduciary duty to Plaintiffs.

In a case factually comparable to the one at hand, *Crosse v. BCBSD, Inc.*, 836 A.2d 492 (Del. 2003), the court similarly concluded that the insurer did not owe the insured a fiduciary duty. In *Crosse*, a plan participant brought an action against its health insurer, alleging that the insurer had received various price reductions and rebates from health care providers that it had failed to pass on to its insureds. The plaintiff claimed

that the insurer had a fiduciary duty to share its cost reductions with plan participants. The court rejected the argument that the insurer owed a fiduciary duty:

> This Court has held that 'the concept of a fiduciary relationship, which derives from the law of trusts, is more aptly applied in legal relationships where the interests of the fiduciary and the beneficiary incline toward a common goal in which the fiduciary is required to pursue solely the interests of the beneficiary in the property.' Using this standard, we have concluded that a typical insurance contract does not create fiduciary duties because the interests of the plan participants and those of BCBSD are not perfectly aligned.

*Id.* at 495 (quoting *Corrado Bros. v. Twin City Fire Ins. Co.*, 562 A.2d 1188, 1193 (Del. 1989)). *See also Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 872 A.2d 611, 626 (Del. Ch. 2005) ("[T]he law is clear that the insurer/insured relationship is one of contract that does not give rise to a fiduciary relationship."); *Employers Ins. of Wausau v. Didion Mid-South Corp.*, 65 Ark. App. 201, 987 S.W.2d 745 (1999) (limiting insurer's fiduciary duty to instances where insurer assumes no monetary risk).

In short, Plaintiffs have not made allegations sufficient to establish the necessary close relationship of trust and confidence between United and Plaintiffs. In the absence of such a fiduciary relationship, Plaintiffs cannot maintain a Co-Payment Claim against United for breach of fiduciary duty.

### 3. Plaintiffs Cannot Maintain a Co-Payment Claim for Negligent Supervision

The tort of negligent supervision exists as a method of creating direct liability against an employer for the tortious conduct of its employees. *Saine v. Comcast Cablevision of Arkansas, Inc.*, 354 Ark. 492, 497, 126 S.W.3d 339, 342 (2003). The tort

is specifically premised on the existence of an employment relationship. *Jackson v. Ivory*, 353 Ark. 847, 865, 120 S.W.3d 587, 598 (2003) ("Liability for negligent supervision is based upon the unique relationship between employer and employee").

In *Jackson v. Ivory*, the plaintiff commenced an action against his alleged former counsel, Chantel Mullen, who had failed to file a lien on his behalf. The plaintiff also brought a negligent supervision action against George Ivory, a sole practitioner who shared office space with Mullen and employed her for various limited tasks. Addressing the question of whether Ivory had a duty to supervise Mullen:

> Under the theory of negligent supervision, employers are subject to direct liability for the negligent supervision of employees when third parties are injured as a result of the tortious acts of employees. Liability for negligent supervision is based *upon the unique relationship between employer and employee*. . . . Under a theory of negligent supervision, the employer's liability rests upon proof that the employer knew or, through the exercise of ordinary care, should have known that the employee's conduct was a proximate cause of the injury and that the harm to third parties was foreseeable.

*Id*. at 865-66, 598 (citations omitted) (partial emphasis added).

Plaintiffs' Complaint alleges no tortious conduct of a United employee. Nor is there any employment relationship between United and any of the other Defendants, or any individual whose conduct is at issue in the complaint. And Plaintiffs have not alleged that United had or retained the right to control or supervise any other Defendant, or any individual or entity whose conduct is identified in the Complaint. Each of the other Defendants in this matter is a separate corporate entity operating its own business. The unique aspects of an employment relationship which justify the imposition of

liability for failure to properly supervise are simply not present here.  Thus, there is simply no basis for a Co-Payment Claim based on negligent supervision.

    **4.    Plaintiffs Cannot Maintain a Co-Payment Claim for Negligence**

Plaintiffs cannot maintain a claim for negligence against United because their sole allegation that United failed to protect Plaintiffs from the PBM conduct does not state a claim upon which relief can be granted.  In *Tackett v. Merchant's Security Patrol*, 73 Ark. App. 358, 44 S.W.3d 349 (2001), the court observed that a duty to protect an individual from the actions of a third party arises only in unique situations:

> Duty is a concept that arises out of the recognition that relations between individuals may impose upon one a legal obligation for the other.  Ordinarily, a person is under no duty to control the actions of another person, even though he has the practical ability to do so.  One is not liable for the acts of another person unless a special relationship exists between the two, such as master and servant, or unless a special relationship exists between him and the victim which gives the victim the right to protection.

*Id.* at 362, 352 (citations omitted).

With regard to United, Plaintiffs' allegation is not that United engaged in any affirmative misconduct, but rather that it knew or should have known of the alleged misconduct of the PBM defendants and failed to communicate this knowledge to Plaintiffs. (Compl. at ¶ 40.)  Such a failure to protect Plaintiffs from the allegedly tortious conduct of a separate entity is not cognizable in negligence in the absence of a special relationship between either the victim and the defendant (such as a fiduciary duty) or the defendant and the third party (such as an employment relationship) engaging in the

14

tortious conduct. In this case, there is no such relationship. As a result, Plaintiffs cannot maintain a Co-Payment Claim based on a negligence theory.

## **Conclusion**

For the reasons set forth above, United respectfully requests that the Court grant its motion and dismiss this matter with prejudice.

Respectfully submitted this 9th day of September, 2005.

/s/ Louis L. Loyd
Louis L. Loyd, Esq.
Bar Number 92181
108 West Third Street
Malvern, Arkansas 72104
Telephone: 501-332-6633
Facsimile: 501-332-6644
Email: louisloyd@sbcglobal.net

Thomas F. Fitzgerald, Esq. (admitted *pro hac vice*)
Michael J. Prame, Esq. (admitted *pro hac vice*)
Christa D. Haas, Esq. (admitted *pro hac vice*)
Groom Law Group, Chartered
1701 Pennsylvania Ave., N.W.
Washington, DC 20006
Telephone: 202-857-0620
Facsimile: 202-659-4503
Email: cdh@groom.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of September, 2005, I served counsel with a copy of the foregoing by placing copies in the U.S. Mail, first-class postage prepaid, and addressed to:

Donald M. Spears, Esq.
Bud Whetstone, Esq.
Whetstone & Spears
400 West Capitol, Suite 2990
Little Rock, Arkansas 72201

Joseph W. Woodson, Jr., Esq.
Attorney at Law, PLLC
400 West Capitol, Suite 2990
Little Rock, Arkansas 72201

Herbert T. Schwartz, Esq.
Attorney at Law
6303 Beverly Hill
Houston, Texas 77057

L. Oneal Sutter, Esq.
Harrill & Sutter, PLLC
310 Natural Resources Drive
P.O. Box 26321
Little Rock, Arkansas 72221

**Counsel for Plaintiffs**

Robert L. Henry, III, Esq.
Michael J. Emerson, Esq.
Barber, McCaskill, Jones & Hale, P.A.
2700 Regions Center
400 West Capitol Avenue
Little Rock, Arkansas  72201-3414

**Counsel for Defendants Caremark, Inc. and Advance PCS**

H. William Allen, Esq.
Allen Law Firm
212 Center Street, Ninth Floor
Little Rock, Arkansas 72201

George A. Borden, Esq.
Ana Reyes, Esq.
Carl Metz, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005

**Counsel for Defendant Medco Health Solutions, Inc.**

                        /s/ Christa D. Haas
                        Christa D. Haas